IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 20-cv-_____

**RIFLE ONION COMPANY LLC**,
a Colorado Limited Liability Company,

    Plaintiff,

v.

**ROBERT HELLMAN**, Individually;
**JAMES HILL**, Individually**;**
**LABYRINTH  HOLDINGS, LLC,**
a California Limited Liability Company
**MEGHAN NICOLE RODRIGUEZ,** Individually; and
**EASY STREET SERVICES COMPANY,**
an Oregon Corporation;

    Defendants.
_____/
_____

**VERIFIED COMPLAINT FOR DAMAGES
AND DEMAND FOR JURY TRIAL**
_____

Plaintiff, **RIFLE ONION COMPANY LLC**, a Colorado Limited Liability Company, by and through its undersigned counsel, hereby sues and submits this Verified Complaint against the Defendants, **ROBERT HELLMAN**, an Individual; **JAMES HILL**, an Individual; **LABYRINTH HOLDINGS, LLC,** a California Limited Liability Company; **MEGHAN NICOLE RODRIGUEZ,** an Individual, and **EASY STREET SERVICES COMPANY**, an Oregon Corporation, for Damages and states as follows:

**PARTIES**

    **I.**    <u>Plaintiff</u>:

1

1. Plaintiff, **RIFLE ONION COMPANY LLC** ("ROC LLC"), is a Colorado Limited Liability Company, registered by the Colorado Secretary of State on April 22, 2016 and with its principal agricultural place of business located at 1404 County Road 223, Rifle, Garfield County, Colorado (the "Rifle Hemp Farm"). At all times material hereto, Macario Carrillo Luna and Manuel Carrillo Luna have been citizens of Garfield County, Colorado; they are the sole members of ROC LLC and each of them owns a separate 50% membership interest in ROC LLC.

2. At all times material hereto, ROC LLC has been duly licensed for handling, propagation, cultivation, harvesting, and storing industrial hemp in Garfield County, Colorado, through the State of Colorado Department of Agriculture, pursuant to the Colorado statutes codified at Colorado Revised Statutes sections 35-61-101 to 109.

3. From on or about the end of May 2019/beginning of June 2019 through late October/early November 2019, ROC LLC handled, propagated, cultivated and harvested industrial hemp on the Rifle Hemp Farm; further, once the industrial hemp was harvested, it was then stored on the Rifle Hemp Farm.

**II.** <u>Defendants</u>:

4. At all times material hereto, the Defendant, **ROBERT HELLMAN**, an Individual ("Hellman"), has been a citizen of the State of California residing in Temecula, Riverside County, California, who is and has been doing business individually and on behalf of Defendant, **LABYRINTH HOLDINGS, LLC**, within the State of Colorado and engaging in the conduct hereinafter complained of in this action.

5. At all times material hereto, the Defendant, **JAMES HILL** an Individual ("Hill"), has been a citizen of the State of California residing in Temecula, Riverside California, who is and has been doing business individually and on behalf of Defendant, **LABYRINTH HOLDINGS,**

**LLC,** within the State of Colorado and engaging in the conduct hereinafter complained of in this action.

6. At all times material hereto, the Defendant, **LABYRINTH HOLDINGS, LLC**, ("LabX") has been a California Limited Liability Company with its principal place of business located at 27349 Jefferson Ave., Ste 205, Temecula, CA, 92590; Hellman and Hill, both citizens of the State of California, are the sole members and managers of Defendant, **LABYRINTH HOLDINGS, LLC**.

7. At all times material hereto, the Defendant, **MEGHAN NICOLE RODRIGUEZ** ("Rodriguez") has been a citizen of the State of Oregon whose was last known to reside at 3506 N.E. 141st Avenue, Portland, Oregon 97230. Rodriguez is and has been doing business individually and on behalf of Defendant, **EAST STREET SERVICES COMPANY**, within the State of Colorado and engaging in the conduct hereinafter complained of in this action

8. At all times material hereto, the Defendant, **EAST STREET SERVICES COMPANY** ("Easy Street"), has been an Oregon Corporation, with its principal business address located in Multnomah County, Oregon.

9. At all times material hereto, Rodriguez has been the President of Easy Street and has exercised personal control over the business operations of Easy Street.

## JURISDICTION AND VENUE

10. This Court has jurisdiction over the subject matter presented in this Complaint pursuant to 28 U.S.C. § 1332, because the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs and diversity of citizenship exists between Plaintiff and Defendants, as authorized by 28 U.S.C. § 1332(a)(1) and 28 U.S.C. § 1332(c)(1).

11. During the time period commencing in or about July 2019 and continuing through late February 2020, Defendants, Hellman, Hill and LabX caused the direct transaction of business in Garfield County, State of Colorado, by extracting unrefined hemp oil from a non-licensed, non-approved State of Colorado industrial hemp mobile lab placed upon real property located in Garfield County, Colorado.

12. In or about January 2020, Defendants, Hellman, LabX, Rodriguez, Easy Street entered into an agreement with ROC LLC in Garfield County, Colorado, for Rodriguez and Easy Street to refine ROC LLC's hemp oil into T-Free CBD.

13. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2), as a substantial part of the actions and events giving rise to this action have taken place in Garfield County, Colorado, including the intentional, knowing, deliberately reckless, and/or negligent material misrepresentations to, the breach of contract, omissions, theft and/or embezzlement, and conspiracy to defraud, and wrongful enterprise committed and against the Plaintiff, and the Defendants diversions and/or deprivation of Plaintiff's personal property

## GENERAL ALLEGATIONS COMMON TO ALL COUNTS

14. In or about July 2019, Hellman, acting for himself, for Hill and using LabX as a front for Hellman and Hill, intentionally misrepresented to ROC LLC that Hellman, Hill and LabX (the "LabX Group") had created a lawful and State of Colorado approved mobile extraction lab within which industrial hemp biomass would be commercially extracted into hemp oil and converted into commercially available and saleable Tetrahydrocannabinol Free (T-Free) Cannabidiol ("CBD") amounts.

15. Although CBD distillate containing less than 0.3% Tetrahydrocannabinol ("THC") has been the predominate form of CBD converted from industrial hemp utilized to manufacture

4

products sold to commercial manufacturers, T-Free CBD sells for a significantly greater market price and provides greater profit potential to everyone from grower to processor to wholesaler to retailer.

16. At all times material hereto, the LabX Group knew or should have known that the mobile extraction lab which they were using to induce ROC LLC to contract with them was not only unproven, unlicensed, and not approved by Governmental authorities as represented to ROC LLC by Hellman, but also was never designed with a capability to commercially convert industrial hemp oil into T-Free CBD.

17. Disregarding such facts, the LabX Group intentionally assured ROC LLC that their mobile extraction lab was fully capable of extracting ROC LLC's hemp biomass into T-Free CBD and ROC LLC and by contracting for the LabX Group to place a mobile extraction lab on the Rifle Hemp Farm and convert ROC LLC's hemp biomass into T-Free CBD, ROC LLC would be able to substantially increase its profits that it expected to earn on ROC LLC's 2019 hemp crop by reducing the expense of processing and refining the hemp biomass.

18. Further, the LabX Group represented to ROC LLC that they had contracted with CBD970, LLC ("CBD970"), another industrial hemp grower, to place a separate, yet materially similar, mobile extraction lab on CBD970's hemp farm property for the purpose of converting CBD970's industrial hemp into T-Free CBD, that the relationship with the other grower was going amazingly well and because of the LabX Group, CBD970 was going to make a lot of money.

19. ROC LLC materially relied on the above-described misrepresentations of the LabX Group.

20. But for the LabX Group misrepresenting the ability of its mobile extraction lab to efficiently process ROC LLC's hemp biomass into T-Free CBD, ROC LLC would not have

entered into any contractual relationship with the LabX Group, nor grown industrial hemp to the volume grown and expenses undertaken.

21. As a direct and proximate result of the above-described representations of the LabX Group, ROC LLC materially relied on the representations and made the decision to engage in business with them and not use the services of any other third-party extractor and industrial hemp refiner.

22. ROC LLC's reliance on the LabX Group's misrepresentations were reasonable and justified.

23. In or about Late August 2019/early September 2019, ROC LLC and the LabX Group entered into a contract for the LabX Group to place a lawful and commercialized mobile extraction and refining lab on the Rifle Hemp Farm property for the purpose of converting ROC LLC's harvested hemp biomass into T-Free CBD. ROC LLC executed the contract first and sent it to the LabX Group for signature; upon receipt Hellman advised Macario Carrillo Luna, President/Sole Member of ROC LLC, that the contract was fully executed and would be scanned and emailed back to ROC LLC.

24. Thereupon, ROC LLC paid the LabX Group a $100,000.00 as a good faith deposit in expectation and anticipation of the LabX Group performing its contractual obligations to ROC LLC, to provide a lawful and commercialized mobile extraction lab which could process ROC LLC's industrial hemp into T-Free CBD.

25. ROC LLC has never received a fully executed contract containing the signature of the LabX Group. At all times material, the supposed mutually executed contract remained in the exclusive possession of the LabX Group; alternatively, the contract was an oral contract to be performed within a one year period of time.

26. As part of ROC LLC's agreement with the LabX Group, the LabX Group represented that their lawful and permitted mobile extraction lab would process at least 35,000 pounds of hemp biomass per month and required ROC LLC to commit to provide the LabX Group not only its 300,000 pound hemp biomass harvest, but an additional 300,000 pounds of hemp biomass; As a result, ROC LLC undertook business relationships with other industrial hemp farmers to provide ROC LLC with the additional hemp to be processed into T-Free CBD in the promised commercial mobile extraction lab.

27. Although LabX Group did place a mobile extraction lab on CBD970's hemp farm property in Garfield County, Colorado, which lab was in operation from October 2019 until February 2020, albeit with numerous breakdowns and lack of proper solvent and media to process and refine the industrial hemp, the LabX Group's mobile extraction lab was only capable of converting hemp biomass into bulk, commercialized, winterized hemp oil containing in excess of 0.3% tetrahydrocannabinol and was only capable of converting said hemp oil into commercially insignificant and unsaleable amounts of T-Free CBD.

28. In reliance on the LabX Group performing their contractual obligation to ROC LLC, from August to October 2019, ROC LLC paid third parties approximately $80,000.00 to construct a pad to the LabX Group's specifications, including providing electric service and water from the Rifle Hemp Farm.

29. In or about the latter part of October 2019, the pad was completed; however, the LabX Group, contrary to their contract, assurances, and representations that were reasonably relied upon by ROC LLC, had no other Mobile Extraction Lab to place upon the Rifle Hemp Farm, other than the one that was just commencing operation on the CBD970 hemp farm property.

30. In or about late October 2019, ROC LLC had completed its industrial hemp harvest consisting of approximately 300,000 pounds of hemp biomass which was the stored on the Rifle Hemp Farm property awaiting the LabX Group to fulfill its contractual obligation to convert ROC LLC's biomass into T-Free CBD.

31. After industrial hemp is harvested, the longer it takes to extract the hemp oil from the hemp biomass, the lower the yield of CBD oil and the greater the probability of the hemp biomass decaying or breaking down.

32. By December 2019, the LabX Group had still not commenced performance of its contractual obligations to ROC LLC.

33. In or about that time, ROC LLC spoke with the managing member of CBD970 and asked if CBD970 would allow ROC LLC to test the LabX Group's processing of some of ROC LLC's hemp biomass in the mobile extraction lab located on CBD970's property. CBD970 agreed, and on December 9, 11 and 13, 2019, and January 6, 2020, ROC LLC delivered 6,000 pounds of its own biomass and another 2,000 pounds of biomass that had been provided to ROC LLC by others.

34. By mid-January 2020, the LabX Group processed the approximately 8,000 pounds of hemp biomass previously delivered by ROC LLC into approximately 100 kilos of unrefined bulk hemp oil, but did not convert, nor was the LabX Group able to convert, ROC LLC's unrefined bulk hemp oil into the refined and finished T-Free CBD.

35. At all times material hereto, Hellman has contracted with Rodriguez and Easy Street to provide legally obtained and/or upon information and belief, illegally obtained, hemp oil for Rodriguez and Easy Street to process into T-Free CBD.

36. Rodriguez and Easy Street have not been licensed and/or authorized in either Colorado or Oregon to handle CBD hemp biomass, hemp oil, hemp distillate, CBD isolate, process CBD Oil into T-Free CBD through a refinement process, or sell CBD Oil and/or T-Free CBD.

37. At no time did The LabX Group and/or Rodriguez and/or Easy Street have a license to process, obtain and/or maintain THC.

38. At no time did The LabX Group and/or Rodriguez and/or Easy Street have a license to process, obtain and/or dispose of THC and any and all solvents used in the extraction and refinement process.

39. At all times material hereto, Easy Street, with the verbal confirmation of Hellman, held itself out to ROC LLC as being engaged in the lawful refining of Cannabidiol ("CBD") oil containing THC into tetrahydrocannabinol free ("T-Free") oil and/or isolate and engaging in the lawful handling, processing, and sale thereof.

40. At all times material hereto, Easy Street, acting in concert with the LabX Group, and more particularly with the knowing acts of Rodriguez and Hellman acting through Easy Street and LabX respectively,

   a. without license, permit and/or other governmental authority,
   b. have unlawfully imported from the State of Colorado into the State of Oregon non-conforming and impermissible CBD oil,
   c. which CBD oil was, prior to the illegal importation,
   d. the separate lawful property of ROC LLC produced from ROC LLC's industrial hemp, and

  e. the separate lawful property of CBD970, LLC, a Colorado limited liability company, produced in Garfield County, Colorado from CBD, LLC's industrial hemp.

41. In or about February 26, 2020, the LabX Group removed its mobile extraction lab from the CBD970 hemp farm, but was unable to place it upon and commence hemp extraction operations on the pad on the Rifle's Hemp Farm because the mobile extraction lab could not receive a permit to operate because it was not "UL Approved," contrary to Hellman's representations as to legal conformity and compliance.

42. In or about February 2020, the LabX Group, acting in concert with Rodriguez and Easy Street, transferred approximately 100 kilograms of the hemp oil extracted from the 8,000 pounds of hemp biomass previously delivered on December 9, 11 and 13, 2019 and January 6, 2020 from the Rifle Hemp Farm to Rodriguez and Easy Street without paying ROC LLC the reasonable value thereof.

43. At all times material hereto, the Defendants acted in their individual, collective and/or corporate capacities as it relates to the torts and breaches against the Plaintiff.

## CLAIMS

### FIRST CLAIM FOR RELIEF
### (Breach of Contract against the LabX Group)

44. ROC LLC reaffirms and realleges paragraphs 1-43 above and incorporates them herein by reference as if fully set forth.

45. The LabX Group failed to perform its contractual obligations to ROC LLC and, therefore, has breached its contract with ROC LLC by failing to:

  a. Provide a lawful and commercial grade capable mobile extraction and refinement lab on the pad created and located on the Rifle Hemp Farm;

> b. Timely process the industrial hemp harvested by ROC LLC and obtained from third-parties by ROC LLC in order to meet ROC LLC's contractual obligations to the LabX Group;
>
> c. Be capable of extracting and convert ROC LLC's hemp biomass into T-Free CBD in a commercialized manner.

46. Plaintiff has performed all conditions precedent required by the terms of its Agreement with the LabX Group or such conditions have been waived or excused.

47. As a result of the LabX Group's breach of the contract, ROC LLC has been damaged as follows:

> a. Expenditure of approximately $80,000.00 on infrastructure to house Labyrinth's mobile extraction trailer;
>
> b. Loss of $100,000.00 paid by ROC LLC to the LabX Group as a deposit for ROC LLC's contractual performance;
>
> c. Loss of the value of approximately 100 kilograms of T-Free refined, CBD Oil processed from ROC LLC's hemp biomass;
>
> d. Diminution in value of more than 300,000 pounds stored by ROC LLC in expectation of the LabX Group timely extracting and processing the hemp biomass in compliance with the terms of the contract; and
>
> e. Lost profits resulting from the loss of ROC LLC's ability to sell contractually compliant T-Free, which said Defendants were obligated to create from the approximately 600,000 pounds of industrial hemp reserved by ROC LLC for this purpose.

**SECOND CLAIM FOR RELIEF**
**(Common Law Fraud in the Inducement against the LabX Group)**

48. Plaintiff reaffirms and realleges paragraphs 1-43 above and incorporates them herein by reference as if fully set forth.

49. This claim is pleaded in the alternative to the First Claim.

50. At the time of the representations and/or omissions, the LabX Group knew that the representations were false or were aware that ROC LLC did not know whether the representations were true or false.

51. The LabX Group made the said representations with the intent that Plaintiffs would rely on the representations and/or omissions, and in fact Plaintiffs did rely on the representations and/or omissions.

52. As a direct and proximate result of the above-described representations of the LabX Group, ROC LLC entered into the contract with the LabX Group.

53. Plaintiff's reliance upon Defendants' false statements and omissions of material facts and failure to disclose adverse material facts caused Plaintiffs damages including, but not limited to:

   a. Expenditure of approximately $80,000.00 on infrastructure to house Labyrinth's mobile extraction trailer;

   b. Loss of $100,000.00 paid by ROC LLC to the LabX Group as a deposit for ROC LLC's contractual performance;

   c. Loss of the value of approximately 100 kilograms of T-Free refined, CBD Oil processed from ROC LLC's hemp biomass;

   d. Diminution in value of more than 300,000 pounds stored by ROC LLC in expectation of the LabX Group timely extracting and processing the hemp biomass in compliance with the terms of the contract; and

    e. Lost profits resulting from the loss of ROC LLC's ability to sell contractually compliant T-Free, which said Defendants were obligated to create from the approximately 600,000 pounds of industrial hemp reserved by ROC LLC for this purpose.

54. Plaintiff reserves the right to seek to amend this Claim to include a claim for exemplary damages in accordance with Colo, Rev. Stat. § 13-21-102(1.5).

## THIRD CLAIM FOR RELIEF
### (Civil Theft against All Defendants

55. Plaintiff reaffirms and realleges paragraphs 1-43 above and incorporates them herein by reference as if fully set forth.

56. In or about February 2020, the LabX Group, Rodriguez and Easy Street acting in concert engaged in the unlawful act of deceiving ROC LLC into releasing ROC LLC's approximately 100 kilograms of CBD oil, then having a value in excess of $100,000.00, into the custody of the Defendants.

57. At that time, the Defendants intended to deprive ROC LLC, the lawful owner of the CBD oil, of the financial benefit of the CBD oil and intended to dispose of the oil for the sole benefit of the Defendants and the detriment of ROC LLC.

58. The Defendants disposed of ROC LLC's CBD oil and have retained the financial benefit thereof for themselves.

59. At all times material hereto, Hellman and Hill have utilized Defendant, **LABYRINTH HOLDINGS, LLC**, to shield themselves from their unlawful actions and, therefore, the corporate veil should be pierced to hold each of them individually accountable for the theft.

60. At all times material hereto, Rodriguez has utilized Easy Street to shield herself from her unlawful actions and, therefore, the corporate veil should be pierced to hold Rodriguez individually accountable for the theft.

61. ROC LLC has employed the undersigned counsel and is entitled to a reasonable attorney's fee for the prosecution of this claim pursuant to § 18-4-405, Colorado Revised Statutes.

## PRAYER FOR RELIEF AS TO ALL COUNTS

WHEREFORE, for the reasons alleged herein, Plaintiff prays for this Court to enter judgment against the Defendants and in favor of Plaintiff as follows:

A. On the First Claim, an award of Plaintiff's damages plus costs of this action against Defendants, ROBERT HELLMAN, JAMES HILL and LABYRINTH HOLDINGS, LLC;

B. On the Second Claim, an award of Plaintiff's statutory damages and costs of this action against Defendants, ROBERT HELLMAN, JAMES HILL and LABYRINTH HOLDINGS, LLC; and

C. On the third Claim an award of Plaintiff's damages plus a reasonable attorney's fee and costs of this action AGAINST ALL Defendants, jointly and severally.

.

## JURY DEMAND

**Plaintiff demands a jury trial of all issues triable as of right by a jury**.

DATED this 28th day of November, 2020.

S/ *Craig A. Brand, Esq.*

**Craig A. Brand, Esq.**
Mystic Law, P.A.
4650 Indian Creek Road
Loveland, Colorado 80538
Telephone: (305) 878-1477
E-mail: Craig@ganjalaw.com
Attorney for Plaintiff

## VERIFICATION OF COMPLAINT

STATE OF COLORADO  )
                   ) SS:
COUNTY OF GARFIELD)

    ON THIS DAY personally appeared before me, MACARIO CARRILLO LUNA, personally known to me or who produced the following identification (Colorado Driver's License), who after being duly sworn, deposes and says that he is the sole member and manager of **RIFLE ONION COMPANY LLC**, a Colorado Limited Liability Company, and that the facts set forth in the above Complaint are true and correct.

                                       RIFLE ONION COMPANY, LLC

                                       By: _____
                                          MACARIO CARRILLO LUNA, Member and Manager

Sworn to and subscribed before me on November 27, 2020.

_____
NOTARY PUBLIC STATE OF COLORADO

My Commission Expires: 11/27/2022

> JUDITH N RUELAS LOPEZ
> NOTARY PUBLIC - STATE OF COLORADO
> NOTARY ID 20184045366
> MY COMMISSION EXPIRES NOV 27, 2022