# EXHIBIT "A"

IN THE UNITED STATES DISTRICT
COURT FOR THE DISTRICT OF
COLORADO

Civil Action No. 1:20-cv-03514-DDD-GPG

**RIFLE ONION COMPANY, LLC**, a Colorado limited liability company,

    **Plaintiff/Counter-Defendant**,

vs.

**ROBERT HELLMAN**, individually;
**JAMES HILL**, individually;
**LABYRINTH HOLDINGS LLC**, a California limited liability company;

    **Defendants.**

**and**

**LABYRINTH HOLDINGS LLC**, a California limited liability company,

    **Counterclaimant and Third-Party Plaintiff,**

vs.

**MACARIO CARRILLO**, an individual and Colorado citizen,

    **Third Party Defendant.**
_____/
_____

**THIRD-PARTY DEFENDANT MACARIO CARRILLO'S FIRST INTERROGATORIES
TO THE LABX PARTIES**
_____

Pursuant to Rule 33, Fed. R. Civ. P., Third-Party-Defendant, MACARIO CARRILLO, by and through his undersigned counsel, herewith propounds the following interrogatories to the LabX Parties (see definition of "LabX Parties" below), to be responded to on or before thirty (30) days from the date set forth in the Certificate of Service below.

**DEFINITIONS**

1

1. "ROC" means Plaintiff/Counter-Defendant, RIFLE ONION COMPANY, LLC, a Colorado limited liability company, its agents, members, managers, employees, representatives, attorneys, and all other persons acting on or purporting to act on behalf of RIFLE ONION COMPANY, LLC, a Colorado limited liability company.

2. "Macario" means Third-Party Defendant, MACARIO CARRILLO a/k/a Macario Carrillo Luna.

3. "Manuel" means Manuel Carrillo a/k/a Manuel Carrillo Luna.

4. "LabX Parties" means any and all Defendants. Counter-Plaintiff and Third-Party Plaintiff in this action.

5. "LabX" means LABYRINTH HOLDINGS LLC, A California Limited Liability Company, and any of their predecessors, successors, corporate parents, subsidiaries, affiliates, agents, members, managers, employees, representatives, attorneys, and all other persons acting on or purporting to act on behalf of LABYRINTH HOLDINGS LLC, A California Limited Liability Company.

6. "Hellman" means ROBERT HELMAN, and any of any person acting on behalf of ROBERT HELLMAN.

7. "Hill" " means CP/TPP JAMES HILL, and any of any person acting on behalf of JAMES HILL.

8. "MEU" means Mobile Extraction Unit.

9. "TPC" means the Counterclaim filed by LabX against ROC and the Third-Party Complaint filed by LabX against Macario in this proceeding.

10. The term "Processing Agreement" means the Labyrinth Holdings Processing Agreement referred to in LabX's Counterclaim and Third Party Complaint (ECF No. 16).

11. "ROC Property" means 1404 County Road 223, Rifle, Colorado 81650-8726..

12. The term "Eagle Springs Property" refers to the place where the Mobile Extraction Unit was placed while processing any hemp biomass delivered to the LabX Parties.by and/or on behalf of

13. The term "person" means any person or entity, and includes individuals, corporations, limited liability companies, partnerships, associations, joint ventures, and other business enterprises, or legal entities and includes both the singular and plural.

14. "Third Party" includes any person not a party to this action and/or not counsel for a party to this action.

15.     The term "representative" refers to any employee, agent, attorney or accountant.

16.     "Business Entity" means a sole proprietorship, corporation, limited liability company, limited partnership, general partnership, association, joint venture, and any other business name through which business is conducted.

17.     The term "identify" means to state:

(a)     **in the case of a natural person, the person's name, business address, residence address, and residential telephone number, employer or identify the entity for whom the person serves as an independent contractor, and title or position**;

(b)     in the case of a person other than a natural person, its name, address, and telephone number and identify the natural person acting on its behalf;

(c)     in the case of a communication or meeting, its date, type (e.g., telephone conversation, discussion, or meeting), the place where it occurred, the identity of the participants, and the subject matter; and

(d)     in the case of a document, the title of the document, the author, the title or position of the author, the addressee(s), each recipient and copy recipient or blind-copy recipient, the type of document, the subject matter, the date of preparation, and Bates stamp numbers.

(e)     In the case of an electronic mail address ("email address"), the complete email address, the name and business and residence address of each person authorized to access, send and/or receive information utilizing the email address, the Universal Resource Locater ("URL") and Domain Name to which the email is attached, and the name of the registrar of the Domain Name.

(f)     In the case of a text messaging device, the country code, area code, city code and telephone number assigned to the text messaging device, the name and business and residence address of the person in whose name the telephone number is billed by the carrier, the carrier name, the manufacturer's name of the text messaging device, the name and business and residence address of the person who had custody of the text messaging device.

(g)     <u>In the case of a piece of equipment</u>, the name, model number and serial number of the piece of equipment, the name and address of the manufacturer and distributor of the equipment, the cost paid by the LabX Parties for the piece of equipment, the name and address of the person who sold the equipment to the LabX Parties, the date of purchase of the equipment, the date of payment for the equipment, and the date of receipt of the equipment by the LabX Parties.

18.     The word "document" or "documents" includes, without limitation, the following items, whether printed, recorded, photographed filmed or reproduced by any other mechanical process, or written or produced by hand, and whether an original master, or copy, namely: Electronically Stored Information ("ESI")(described below); work sheets; agreements; books; records; opinions or report of consultant; bank statements; financial statements; check books; checks; cancelled

checks; deposit slips; charge slips; stubs or registers; diaries; communications, including intra-company communications; correspondence; cablegrams; radiograms; telexes; e-mails; instant messages; short messaging service (SMS); Blackberry Messenger Messages (BBM); voicemails; statements posted on or the internet, memoranda, including intra-company memoranda; summaries; notes and records of telephone conversations, meetings and conferences; notes and records of personal conversations and interviews; ledgers, invoices; contracts; notices; drafts of any documents; marginal or other comments or notes appearing on any documents; business records; charts; plans; specifications; schedules; computer printouts; computer tapes; microfilms; microfiches; photographs; slides; negatives; motion pictures; video recordings; tape or other voice recordings and transcription thereof; and data compilations (including meta-data) from which information can be obtained, translated, if necessary, by you through detection devices into reasonably usable form; and any other information containing paper, writing or physical thing including all underlying, supporting or preparatory material now in your possession, custody or control, or available to you, your counsel, accountants, agents, representatives or associates. "Document" or "documents" specifically includes documents kept by individuals in their desks, at home or elsewhere.

19.     The word "document" or "documents" also includes, without limitation, the original and all file copies and other copies that are not identical to the original no matter how or by whom prepared, and all drafts prepared in connection with any documents, whether used or not.  If the original of any document is not in your possession, custody or control, a copy of that document should be produced.

20.     "Copy" when used in reference to a document means any color, or black or white facsimile reproduction of a document, regardless of whether the facsimile reproduction is made by means of carbon papers, pressure sensitive paper, xerography or other means or process.

21.     The term "communication," "communications," or "communicate" means any writing, or oral conversation, including, but not limited to, telephone conversations and meetings, letters, e-mails, text messages, voice mails, telegraphic and telex communications, instant messages, and includes all information relating to all oral communications and "documents" (as hereinabove defined), whether or not any such document, or the information contained therein, was transmitted by its author to any other person.

22.     The term "including" means "including without limitation."

23.     The term "exchanged" and the term 'transfer" each mean delivering in any form whatsoever by the person or persons initiating the delivery to the person or persons receiving the delivery

24.     If not expressly stated, "control" means in your possession, custody, or control or under your direction, and includes in the possession, custody or control of those under the direction of you or your employees, subordinates, counsel, accountant, consultant, expert, parent or affiliated corporation, and any person purporting to act on your behalf.

25. "Pertaining to," "pertains to" and "pertain to" means directly or indirectly, refer to, reflect, describe, pertain to, arise out of or in connection with, or in any way legally, logically, or factually be connected with the matter discussed.

26. "Relating to," "relates to" and "related to" means, without limitation, comprising, concerning, containing, embodying, referring to, alluding to, responding to, about, regarding, explaining, discussing, showing, describing, studying, reflecting, analyzing or constituting. A communication or document "relating to" any given subject means any communication or document that constitutes, contains, embodies, reflects, identifies, states, refers to, deals with, or is in any way pertinent to that subject, including, without limitation, documents concerning the preparation of other documents.

27. "Applicable Time Period" means any time on and after January 1, 2019.

## INSTRUCTIONS

1. Any word written in the singular herein shall be construed as plural or *vice versa* when necessary to facilitate the response to any request.

2. The use of the present tense includes the past tense, and the use of the past tense includes the present tense, so as to be inclusive of any information that otherwise may be excluded from disclosure.

3. With respect to each answer, document, or electronically stored information that you presently intend to refuse to identify or answer such Interrogatory under a claim of privilege or other exemption from discovery, state the title and nature of the document, and furnish a list signed by the attorney of record giving the following information with respect to each answer, document, and electronically stored information withheld:

   a. The nature of the privilege claimed (including work product);
   b. If the privilege is being asserted in connection with a claim or defense governed by state law, the privilege rule being invoked;
   c. The date of the document, ESI, or oral communication, or if no date appears, the date on which the document was prepared;
   d. The type of document (*e.g.*, letter or memorandum);
   e. If electronically store information, the software application used to create it (*e.g.*, MS Word or MS Excel Spreadsheet);
   f. If a communication (*e.g.*, e-mail), the sender, recipient, subject matter, and date of the communication was made; and
   g. The general subject matter of the document, ESI, or communication.

4. If a document identified in an answer to an interrogatory once existed and has subsequently been lost, destroyed, or is otherwise unavailable for production, please state with respect to such document:

   a. The last known location of the document;
   b. The last date or time period the document was known to be in existence;
   c. The person who last had control or custody of the document;
   d. The circumstances under which the document was destroyed or otherwise rendered unavailable for production;
   e. Whether the document was stored under conditions of controlled access, and, if so, the names of all persons having access to the document;
   f. The person who requested or directed the destruction of the document; and
   g. The reasons for the request or direction resulting in the document becoming unavailable for production.
5. Please also identify all persons capable of offering testimony on the subject matter or contents of the document destroyed or otherwise rendered unavailable for production.

## INTERROGATORIES

**UNLESS OTHERWISE SPECIFICALLY STATED, THESE INTERROGATORIES REFER TO THE TIME PERIOD FROM MAY 1, 2019, TO NOVEMBER 28, 2020**

1. Was the LabX Parties' MEU was first placed on the ROC Property? _____. If yes:

   a. Set forth the date of placement and location where the MEU was placed:

   ANSWER:

   b. Set forth the first date the MEU was utilized to process hemp biomass on the ROC Property.

   ANSWER:

2. Concerning paragraph 33 of the TPC:

   a. State the date(s) on which the first batch of oil was processed.

   ANSWER:

   b. How much hep biomass was utilized to produce the first batch of oil?

   ANSWER:

   c. Set forth the amount of oil produced in the first batch.

6

      ANSWER:

  d.  Set forth the date(s) that such representation was made:

      ANSWER:

  e.  Identify the person(s) making the representation and the manner in which the representation was made (e.g., email, in person, etc.).

      ANSWER:

  f.  Identify the person(s) to whom the representation was made.

      ANSWER:

  g.  Set forth the terms of contract which required ROC and/or Macario to provide LabX with "a buyer for the first batch of oil, despite having no such buyer."

      ANSWER:

  h.  Provide each date and location where the first batch of oil was stored and/or transported while in the LabX Parties' care, custody and/or control.

      ANSWER:

  i.  Itemize each element of damages suffered as a result of the alleged misrepresentation, including a description of how such element of damage was calculated.

      ANSWER:

3.  Concerning paragraph 42 of the TPC:

  a.  set forth the date(s) and description of the willful and wanton conduct.

      ANSWER:

  b.  Identify the person(s) who engaged in the willful and wanton conduct and the manner in which the willful and wanton conduct was transmitted to LabX (e.g.,

email, in person, etc.).

ANSWER:

c.  Identify all witnesses to the willful and wanton conduct.

ANSWER:

d.  Itemize each element of damages suffered as a result of the alleged willful and wanton conduct, including a description of how such element of damage was calculated.

ANSWER:

4.  As to paragraph 45 of the TPC:

a.  Describe each product and service provided by LabX to ROC (including actual dates) when ROC received an economic benefit.

ANSWER:

b.  As to each product and/or service, itemize each element of damages by which ROC was enriched.

ANSWER:

c.  Describe each product and service provided by LabX to Macario (including actual dates) when Macario received an economic benefit.

ANSWER:

d.  Itemize each element of damages suffered as a result of the alleged willful and wanton conduct, including a description of how such element of damage was calculated.

ANSWER:

5.  Identify Patrick K, who was listed as Vice President Operations on the LabX Manifest

dated Tuesday, January 28, 2021, by LabX, as Shipper and Crown Estate Holdings as Receiver.

ANSWER:

DATED this 25th day of October, 2021.

S/ *Craig A. Brand, Esq.*

_____
**Craig A. Brand, Esq.**
**FBN: 896111**
Mystic Law, P.A.
4650 Indian Creek Road
Loveland, Colorado 80538
Telephone: (305) 878-1477
E-mail: Craig@ganjalaw.com
Attorney for Plaintiff/Counter-Defendant
and Third-Party Defendants

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 25, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing via email to Nadav Aschner, Esq., The Rodman Law Group, LLC, 600 S. Cherry St., Ste. 835, Denver, CO 80246, nadav@therodmanlawgroup.com and nadav.aschner@gmail.com .

S/ *Craig A. Brand, Esq.*

_____
**Craig A. Brand, Esq.**